UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
PAVEL YANKELEVICH,                                          :
                                                            :   **MEMORANDUM DECISION**
                                        Plaintiff,          :   **AND ORDER**
                                                            :
            - against -                                     :   20-cv-1776 (BMC)
                                                            :
COMMISSIONER OF SOCIAL                                      :
SECURITY,                                                   :
                                                            :
                                        Defendant.          :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled for the purpose of receiving disability insurance benefits. The ALJ found that plaintiff has severe impairments of shoulder tendonitis, GERD, obesity, lumbar spine disc herniation and radiculopathy, cervical spine disc herniations, major depressive disorder, generalized anxiety disorder, and mood disorder. Nevertheless, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work with a number of limitations. Since a vocational expert testified that there were sedentary jobs in the national economy that could accommodate those limitations, the ALJ found that plaintiff was not disabled.

A rehearing is required because the ALJ committed legal error in two respects.

**I.      The Listing of Impairments**

Plaintiff's first point of error is that the ALJ should have found him disabled *per se* because he met the standards for Medical Listing 1.04A, which deals with spinal disorders. That Listing, in relevant part, requires:

> 1.04. Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

The ALJ found that this Listing did not apply, stating: "[T]he record does not show *consistent* evidence of motor loss, muscle atrophy or weakness, or sensory or reflex loss. The majority of the physical exams found only a limited range of motion in the lumbar and cervical spine and a positive straight leg raising test, but full motor strength and intact sensation." (Emphasis added). In the instant review proceeding, the Commissioner argues that the Listing is not met because "there is no evidence of motor loss accompanied by sensory or reflex loss."

The key word in the ALJ's finding is "consistent." That is not a word that appears in the applicable regulation in this context. As measured against this record, it is vague. First, the applicable regulation does not require "consistency" to the extent that it could be interpreted to mean some particular percentage – whether a substantial number, a "majority" of physical examinations as the ALJ saw it, or an overwhelming majority of those examinations. Certainly, it does not mean that a positive result must obtain in every single physical examination to meet the Listing. The regulation requires a qualitative assessment, not a quantitative one.

That is why the regulations recognize that positive findings in musculoskeletal impairments may be "intermittent." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D. More than that, the regulations explain what to do when the positive findings are intermittent: "Because abnormal physical findings may be intermittent, their presence over a period of time

2

must be established by a record of ongoing management and evaluation.  Care must be taken to ascertain that the reported examination findings are consistent with the individual's daily activities." Id.

This record is clearly in the land of intermittence.  Focusing on the only part of the Listing that the Commissioner contests – motor loss accompanied by sensory or reflex loss – there is quite a lot of evidence in the physical examination that identifies those as positive findings.  A digest of the records yields at least the following:

| Date | Source | Observations |
|---|---|---|
| 3/29/15 | Dr. Victor Katz, an orthopedic surgeon who treated plaintiff's back pain | Plaintiff reported "numbness and tingling in the right foot and calf" – *i.e.*, sensory loss.  An examination revealed weakness of the extensor hallucis longus and tibialis anterior on the right side.  Dr. Katz stated that plaintiff "essentially ha[d] failed conservative management consisting of physical therapy and medications" and was "a good candidate for surgical intervention." |
| 4/28/15 | Dr. Oleg Barshay, plaintiff's chiropractor | An examination revealed pain and weakness in the left shoulder, decreased sensation over the left C5-C6 and the left L5-S1 dermatomes (*i.e.*, sensory loss), and periodic bilateral hand pain and numbness.  Dr. Barshay saw these symptoms as "consistent with the diagnosis of cervical and lumbar radiculopathy, plexopathy, and/or peripheral nerve entrapment." |
| 11/20/15 | Dr. Barshay | After several visits, Dr. Barshay completed a "Final Narrative Report."  A sensory examination of the upper and lower extremity dermatomes "showed no decrease in cutaneous sensation due to pin prick, *except for some decrease in the L5/S1 distribution on the left*." (Emphasis added).  Dr. Barshay also found "[m]ultiple intersegmental vertebral motor dysfunctions" (*i.e.*, motor loss), as well as a "decreased left Achilles deep tendon reflex" (*i.e.*, reflex loss). |
| 8/18/16 | Dr. Emmanuel Gelin, the consultative examiner | Dr. Gelin observed that plaintiff's motor system, sensory systems, and reflex findings were "all normal *except for bilateral lower extremity weakness 4/5*." (Emphasis added). |

3

| 7/3/17 | Dr. Alexey Migirov, an osteopath who treated plaintiff for pain in his lower back and legs | Plaintiff reported numbness and tingling in his buttocks, thigh, and leg. Plaintiff's muscle stretch reflexes had numerous "abnormalities." |
|---|---|---|
| 7/5/17 | Dr. Migirov | Dr. Migirov assessed sensory hyperesthesia in the right L5-S1. |
| 7/19/17 | Dr. Migirov | Dr. Migirov again assessed sensory hyperesthesia in the right L5-S1. |
| 1/16/19 | A physical therapist[1] | The physical therapist assessed chronic back pain that limits plaintiff's mobility. |

Of course, as the ALJ pointed out, there are also quite a few negative reports of muscle weakness or sensory or reflex loss. For instance, an April 13, 2015 treatment note from Dr. Michael Trimba, a pain management specialist, reported positive straight leg raising and a limited range of motion but also noted no muscle atrophy and intact pin prick and light touch sensation. Similarly, Dr. Mark Gladstein, an anesthesiologist and pain management specialist, examined plaintiff on July 26, 2017 and found that plaintiff had normal muscle tone and strength, no tenderness, and an intact sensory system.

But considering the record in its entirety, it is not clear to me what the ALJ meant by "consistent" other than that plaintiff met the Listing based on parts of the record, and he didn't based on other parts of the record. In other words, the ALJ did not apply the framework for evaluating intermittent positive findings set forth in the Listing. I need a better articulation to undertake a meaningful "substantial evidence" review rather than performing a *de novo* determination myself.

I am not suggesting that this kind of explanation is required every time an ALJ considers a Listing. Most often it is clear enough that a Listing is met or not met without an extended discussion. As the cases recognize, in a multi-criteria Listing, the failure to satisfy even one of

---

[1] The physical therapist's name on the form is not entirely legible, but it appears to read "Agnes Garcia."

4

those criteria ends the inquiry. See, e.g., Otts v. Comm'r of Soc. Sec., 249 F. App'x 887, 888 (2d Cir. 2007) (summary order). Here, however, out of the four criteria in Listing 1.04, there is no dispute that plaintiff satisfies all of them except perhaps one, and, more importantly as to that one, the record shows that there is a substantial amount of evidence that could support a finding that it is satisfied as well.

**II.     The Treating Physician Rule**

Although the failure to adequately analyze the application of Listing 1.04 is a sufficient ground to remand for additional consideration, I will consider one of plaintiff's remaining points of error to reduce the possibility of a subsequent remand.

This is plaintiff's claim that the ALJ failed to give adequate weight to the opinion of his treating psychiatrist, Dr. Eugene Khotimsky. On June 11, 2016, Dr. Khotimsky provided a medical source statement at the request of the Commissioner (the "2016 Khotimsky opinions"). He reported that he had seen plaintiff approximately monthly since January 2015. Then, on August 2, 2018, Dr. Khotimsky provided a letter, apparently at the request of plaintiff's attorney, reiterating those opinions (the "2018 Khotimsky opinions"). Without summarizing the details of those opinions, it is sufficient to note that the limitations contained in the reports were so severe that, if accepted without qualification, I do not believe the Commissioner would dispute the fact that plaintiff would not have the residual functional capacity that the ALJ thought he did.

The ALJ afforded only "partial weight" to Dr. Khotimsky's opinions. What that meant as a practical matter is that the ALJ accepted his opinions if they were supported by other evidence, but he rejected Dr. Khotimsky's opinions if they were contradicted by anything else in the record. For instance, Dr. Khotimsky opined that plaintiff had a "poor memory," but the ALJ preferred the opinions of Dr. Trimba and Dr. Gladstein, who noted that plaintiff's memory was "intact." Similarly, in both his 2016 and 2018 opinions, Dr. Khotimsky opined that plaintiff was

unable to use public transportation or tolerate crowded areas. The ALJ, however, considered that inconsistent with Dr. Khotimsky's own description of plaintiff's "[a]ttitude, appearance, [and] behavior" as "friendly, cooperative, [and] well-related." The ALJ also found it inconsistent with Dr. Katz and Dr. Trimba's descriptions of plaintiff as "alert," "cooperative," and "oriented," as well as statements from the consulting psychologist, Dr. David Lefkowitz, that plaintiff's speech was "coherent and relevant," that plaintiff "maintained eye contact," and that plaintiff "answered the questions rapidly, openly and willingly." Finally, Dr. Khotimsky also found that plaintiff had impaired attention and concentration, but the ALJ preferred Dr. Lefkowitz's opinion that plaintiff had "logical and goal directed" thought processes, "very good" calculations, and "good" concentration.

Finally, in discounting Dr. Khotimsky's opinions, the ALJ offered the following explanation:

> While Dr. Khotimsky is a treating specialist, his opinion is not supported by treatment notes or a detailed narrative treatment history, and his opinion takes into consideration the claimant's reported physical limitations, which are inconsistent with the treatment record, and his alleged brain damage, which is not a medically determinable impairment, as discussed previously. Additionally, while Dr. Khotimsky states that the claimant needs assistance and supervision in his daily activities, this is inconsistent with the record, as the claimant has attended biweekly therapy regularly and punctually for over two years, and the claimant traveled to the consultative exam by himself, driving to the exam alone. The claimant himself also reported that he was able to travel independently and go shopping regularly.

(Citations omitted). For a number of reasons, I cannot find that the ALJ's reasoning is sufficient under the treating physician rule.

First, the ALJ's reference to Dr. Khotimsky's opinions being "not supported by treatment notes" did not result from any inconsistency between his treatment notes and his opinions. Rather, the reference reflects the fact that none of Dr. Khotimsky's treatment notes are in the record. The ALJ's statement therefore raises the obvious question, "why not?" The record does

6

not contain any indication that either plaintiff's attorney or the ALJ ever requested them. Yet the ALJ recognized that plaintiff has severe mental impairments, which would seem to compel a review of his psychiatric treatment notes if they can be obtained with reasonable effort.

The degree of severity of plaintiff's mental impairments cannot be determined without knowing whether the treatment notes support Dr. Khotimsky's opinions. Nor can Dr. Khotimsky's opinions be properly compared to any other evidence in the record without knowing if Dr. Khotimsky's opinions are supported by his treatment notes.

Thus, for example, if Dr. Khotimsky is one of the rare psychiatrists who does not take treatment notes, then I could justify the ALJ having given his opinions partial weight. But if the treatment notes give detailed support for his opinions, then Dr. Khotimsky's opinions as a board-certified psychiatrist with a long relationship with plaintiff are probably worth a lot more than the brief notations of an anesthesiologist and pain management doctor, each of whom saw plaintiff only two or three times, and a consulting psychologist who saw plaintiff only once. See, e.g., Gonzalez v. Saul, No. 19-cv-2946, 2020 WL 7385712, at *2 (E.D.N.Y. Dec. 16, 2020) ("[C]omparing a treating physician's opinion to that of a single-shot consultant, or a physician that reviews only limited records, requires some skepticism on the part of the ALJ, particularly in evaluating mental impairments."). In fact, the ALJ's criticism that Dr. Khotimsky's opinion did not have a "detailed narrative treatment history" does not measure up well against the ALJ's acceptance of Dr. Trimba and Dr. Gladstein's one-word notation that plaintiff's memory seemed "intact."

Second, the ALJ's decision to discount Dr. Khotimsky's opinions because they "take[] into consideration the claimant's reported physical limitations" isn't a valid criticism of those opinions. Of course Dr. Khotimsky took into account plaintiff's reported physical limitations.

7

Psychiatrists must take into account the interrelationship between perceived wellness of the body and wellness of the mind. "Good psychiatry begins with a responsible Doctor undressing the patient and carrying out a proper physical examination." Fred Ovsiew, Should Psychiatrists Perform Physical Examinations?, Psychiatric Times, Apr. 1, 2006, https://www.psychiatrictimes.com/view/should-psychiatrists-perform-physical-examinations. "Psychiatrists specialize in mental phenomena, but this special expertise does not confer license to ignore the additional information that can be gathered from physical signs." Id.

I recognize that the ALJ did not credit fully plaintiff's description of his limitations. Even assuming that the ALJ had a valid basis to do that, however, it seems obvious enough that a claimant who thinks his physical impairments are more severe than they really are, in some cases, can have mental impairments not readily distinguishable from those that might result, in part, from actually suffering from the perceived severity of those physical impairments.

It would be one thing if the ALJ had found that plaintiff was malingering as to his physical (or mental) impairments and was able to bamboozle Dr. Khotimsky. But the ALJ made no such finding. To the contrary, the ALJ himself agreed that plaintiff actually has severe physical impairments that could produce the severity of symptoms of which he complains. Especially with the ALJ not having seen any treatment notes, it does not seem a valid criticism of Dr. Khotimsky's opinions that, like any psychiatrist should, he took plaintiff's reported physical impairments into account in evaluating plaintiff's mental impairments.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is granted [12] and the Commissioner's motion for judgment on the pleadings [14] is denied. The case is remanded for rehearing pursuant to the fourth sentence of 42 U.S.C. § 405(g) so that the ALJ can (1) reconsider and explain whether plaintiff meets Listing 1.04A with a focus on plaintiff's motor loss and sensory

8

or reflex loss and (2) attempt to obtain Dr. Khotimsky's treatment notes and reevaluate Dr. Khotimsky's opinions against the other evidence of record.

**SO ORDERED.**

_Digitally signed by Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
April 23, 2021

9